I'm representing Mr. Gomez-Leon. Since the prosecution has conceded the issue of whether or not involuntary manslaughter was a crime of violence, I won't mention that. Well, I was kind of curious that the government did that. Does that bind this court? No, not necessarily. You can decide what you want. I'm not prepared to argue it particularly. I'll submit a brief on that issue and the cases that were submitted by the United States attorney. I believe he's correct, obviously. All right. So I'll move on to what I think is my two best points. One is I wanted to argue about the talk about the conviction under California health and safety code section 11379A. The first issue and I think the most clear-cut issue for the defense is that I don't believe that Mr. Gomez was given a sentence of more than 13 months, which is important because if he wasn't given more than 13 months, then under the guidelines, he only gets a plus 12 plus 8, which is a 20, which means a difference of a sentence in the low end between 84 months and 57 months. My reasoning is this. Mr. Gomez came before Judge Deda in state court, was given 127 days of custody, and the most important thing is he was placed on probation. California law is this. If you're on probation, if you're given probation for a felony under penal code section 19.2, you cannot be given more than 365 days, one year. That's the maximum. If you're never taken off probation, that's the most that you can ever serve. When Mr. Gomez was violated and came before Judge Subraw, who now is a district federal judge in San Diego, Judge Subraw had three choices. Judge Subraw could send him to state prison if he wanted, and if he'd send him to state prison for two years, even if he hadn't served actual time more than 13 months, which he may not have, it would have been close, I wouldn't have an argument for you because those are the cases that the prosecution is relying on in their brief. But Judge Subraw didn't. The other choice that Judge Subraw had was he could say to Mr. Gomez, okay, Mr. Gomez, I think you need a lot more time. You can waive your good time credits if you want. Otherwise, I'm going to send you to state prison. And if Mr. Gomez had waived his good time credits, the most that he could have gotten because of penal code 19.2 would have been 365 days. All right? So that's only 12 months. That's not more than 13 months. But what Judge Subraw did was, Judge Subraw gave him 365 days. Now, the district judge in this case said, well, 365 days plus 127, that's over 13 months. Therefore, that is an excess of 13 months, so that's a plus 16. But no, it couldn't be more than 13. He got the good time credits, but he could not, if he retained him on probation, statutorily, he could not have served more than 12 months. Is it clear from the record that this was a condition of probation and not a prison term? Yes, absolutely. There are, the papers are quite clear in the excerpt of record that he was continued on probation by Judge Subraw. And that he did not go to prison but rather to the county jail. He did not go to prison. Absolutely. The papers are very clear on that. So he's only entitled, he should only have a plus 12, which means a little less than three years of custody time if he's given a guideline sentence. So I'll move on. The other issue with regard to §379A is whether or not Rivera-Sanchez, basically whether or not Rivera-Sanchez, which is a 247 Fed 3905, which was cited in my brief, was overruled by the Shoemake case, which the prosecutor referred to you in his letter. I think that Mr. Gomez-Leon's 11-379A conviction is exactly the same for, as the 11-360A, 11-360 conviction in Rivera-Sanchez in that the, the, the count that Mr. Gomez was convicted of states that unlawfully sell, furnish, administer, and give away, and offer to sell, furnish, administer, and give away controlled substances. Now, the issue in Rivera-Sanchez was whether or not a solicitation was a, a, a, a drug trafficking offense. And, and, and an in bonk opinion in, in Rivera-Sanchez said no. An offer to sell, an offer to transport, the solicitation is not under Taylor, is not a, a drug trafficking felony. And I, I don't think that Shoemake has overruled, ruled Rivera-Sanchez. I think Rivera-Sanchez is a good law, and it should apply to Mr. Gomez-Leon's situation. And on that, I'll submit and save any remaining time for rebuttal. You may do so, counsel. Thank you. We'll hear from the government. Thank you. May it please the Court, Timothy Sulel on behalf of the United States. First of all, Your Honor, with respect to the, the plaint and the plea agreement in this case satisfy that, that, that Gomez-Leon's conviction under 11379A does satisfy the prerequisites for a drug trafficking offense under the modified categorical approach. The complaint is not overbroad as laid out in, on page 49 of the excerpts of record. Gomez-Leon did unlawfully sell, furnish, administer, and give away the methamphetamine and the solicitation to offer to sell, furnish, and administer. Don't you have a real problem on the 13-month issue? I don't believe so, Your Honor. I believe that the documents, I disagree with counsel in that I believe the documents lay out in the excerpts of record that he, the sentence imposed, the initial sentence imposed was 127 days, and that the subsequent sentence imposed by Judge Sabraw was 365 days. Is People v. Johnson still good law in California? I'm not familiar with. Well, there's a case that deals with jail time credit, and if the, it seems to place this one-year limit that opposing counsel is talking about on the amount of time that can be served in jail as a condition of probation. And I'm looking at ER 56, or at least I think that's where this page 56 comes from, and the 127 days does appear to be a condition of probation rather than a prison term. Do you agree with that much, that it's a condition of probation and not a, that he's sent to the county jail and not to prison? No, I believe under the guidelines the sentence imposed here is 127 days. I believe it does mention probation, but the sentence imposed in this document, commitment to the sheriff for 127 days, would count. Well, the reason, well, it might count, but I guess what I'm struggling with is that Penal Code section 19.2 seems to say that you can't be committed for more than one year. And if that is true, I guess the question would then come down to does the sentence imposed mean the sentence that should have been imposed or the sentence that actually was imposed if it was excessive under state law? I believe the case law makes clear that the sentence imposed is the actual sentence imposed and that you add together the probation violation sentence imposed with the initial sentence imposed and seeing whether or not that's more than 13 months. Okay, and I guess the following question that I have is, assuming that your arithmetic is right, which it obviously is, but further assuming that under state law the sentence should have been shorter, what do we look at? The maximum that we think the state should have given him or the actual amount that he received? I believe in this case you would look at the actual amount that he received under both the initial sentence and the probation violation, the sentence imposed for that subsequent case. And if the subsequent probation violation here indicates it was 365 days commitment to the sheriff, that that should be added to the initial sentence imposed. And the cases make clear that despite the good time credits and other credits like that are not factored in in determining whether or not the sentence imposed exceeds the 13 months. And with respect to the Rivera-Sanchez, excuse me, Rivera-Sanchez predates the 2001 amendment to the guidelines that clarifies that in the Shoemate, in Vidal, in Cox, in particular, the most recent case made clear that solicitation offenses are not part of the statute. They do qualify as drug trafficking offenses. And in this case, the offer to sell, furnish, administer, and give away the methamphetamine would also qualify as a drug trafficking offense. So unless there's any further questions, the government submits and respectfully requests that the court affirm the sentence. Well, I have a question. I read your 28-J letter, but I'll ask you the same question I asked counsel. Are we bound by your concession on the voluntary or not the voluntary but on the manslaughter issue? I believe that the manslaughter issue is properly conceded under Fernandez. Are you speaking for Maine justice or just for your U.S. attorney? I believe under the case law, the new case law, that the en banc Rivera, or Fernandez-Ruiz and Nevarez-Gomez would have control. I don't think you answered my question. Are you speaking for Maine justice or are you speaking for the U.S. attorney? I'm speaking for the U.S. attorney in this matter. So I believe that the vehicular manslaughter, in that the crime can be satisfied with the mens rea without gross negligence. It doesn't rise to the level required for a crime of violence in this. What about that Fifth Circuit case? There was a dissent and there was quite a joinder on the fundamental question as to whether the listing of manslaughter, when other parts of the same statute talk about voluntary and involuntary, indicates that it's generic. Yes. And certainly we relied on that in our brief and we thought it was a sound and proper argument. When you're brief, you mean your 28-J? No, in the initial brief, we relied in part on that Fifth Circuit case that Your Honor speaks of. Since that time, Fernandez-Ruiz seems to make clear that for a crime of violence, it has to be something more than without gross negligence. And here it just wouldn't satisfy the generic definition of what a manslaughter conviction is. Very well. Thank you. Mr. Ball, you have some reserved time. Your Honor, I had cited in my brief the California defense practice, which we use in state court for guidance and it's a great book. And I want to quote something which I think will clarify for the court. It said that under the term of waiver of right to credit, a waiver may operate to the defendant's benefit. If the defendant serves one year in the county jail as a condition of probation and the court later revokes probation, the court would otherwise be faced with the choice of sentencing the defendant to state prison or releasing the defendant without punishment. I mean, that's the point is that because statutorily, statutorily under California law, you can't get more than 12 months. Well, that comes back to the question I asked opposing counsel. Assuming that you're correct about how state law operates, if there's been a mistake and the person actually was sentenced to 13 or 14 or 15 months when they shouldn't have been, do we look at what actually happened to them, even if it was improper, or do we look to the statute? You're assuming that Judge Sobraw made a mistake, and he did not. The reason Judge Sobraw did not make a mistake is Judge Sobraw had sentenced hundreds and hundreds of people, and he knew that you absolutely had to get your good time credit. So he had to, in order to get any more time at all, another two or three months, okay, in county jail. He did the 365 as the maximum. He had to give them the 365. Otherwise, he wouldn't give them anything. That was the whole point. He didn't make any mistakes. The 365 basically, well, I come from a different state, which is why I'm confused about this procedure, I guess. The 365 then, your explanation is that it incorporates or includes the 127 that had been given previously. Absolutely. Yes, yes, exactly. As a matter of law. As a matter of law, absolutely. So he gets the good time credits. That's why I read to you this business about waiving good time credits. Yes, if you waive good time credits, then you can get actually day for day 365 days, okay? But Judge Sobraw chose not to have him waive the good time credits. So he had to give them 365 in order to give them any time at all in custody, to speak of, another two or three months. And Judge Sobraw wanted to save the opportunity if he violated again to revoke him and put him in state prison. In other words, he gave him one bite at the apple, spanked him a little bit more, and then thought, well, either he's going to be deported and stays there, or if he comes back and he violates again, I'll send him to state prison for two years. That was the whole point. And that's what state judges hundreds and thousands of times. And if you know anybody that does this, they'll explain that to you. That's how it works. So it's statutory. It can't be more than a year. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument next in Wu v. Mukasey.
judges: Gibson , O'scannlain, Graber